UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



CIVIL MINUTES - GENERAL

Case No. SACV 11-664 DOC (RNBx)                    Date: January 26, 2012

Title: THOMAS A. SEAMAN v. SEDGWICK, LLP

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                NONE PRESENT

PROCEEDING (IN CHAMBERS): DENYING MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendant Sedgwick, LLP ("Defendant") (Docket 20). The Court finds this matter appropriate for decision without oral argument. Fed R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, the Court DENIES the Motion.

**I. BACKGROUND**

The facts of this case were set forth in detail in the Court's first order granting Defendant's Motion to Dismiss (Docket 16) ("First MTD Order"). Briefly, Plaintiff Thomas A. Seaman ("Plaintiff"), the Court appointed receiver for the MedCap entities, brings this case against Defendant, lending counsel for various MedCap entities, for professional negligence and aiding and abetting breach of fiduciary duty.

**II. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a

complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id*. at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id*. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id*. at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id*.

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Statute of limitations may be raised as a defense "[i]f the running of the statute is apparent on the face of the complaint." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). A "district court may grant a 12(b)(6) motion to dismiss on statute of limitations grounds 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' " Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000) (quoting Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991)).

### III. DISCUSSION

#### A. Statute of Limitations

The California Civil Procedure Code provides that a legal malpractice action, other than for actual fraud, "shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." Cal. Civ. Proc. Code § 340.6(a) ("Section 340.6"). The Court will address both the one year discovery rule and four year statute of repose to determine if either calculation bars the present suit.

##### 1. One Year Discovery Rule

In the Court's First MTD Order, it granted Defendant's first Motion to Dismiss because Plaintiff did not provide sufficient information as to when he learned all of the facts relevant to the asserted legal malpractice claims. The primary question for the purposes of the present Motion to Dismiss is thus whether Plaintiff has remedied the prior deficiency.

Defendant takes the position that there are only four facts relevant to Plaintiff's present claims: "(1) the supposed 'limitations' in the PPMs, (2) the Loans exceeded those alleged limitations, (3) the Loans had suffered losses, and (4) Sedgwick was counsel who advised on the Loans." Motion to Dismiss, 12. Defendant thus alleges that on August 14, 2009, Plaintiff knew all necessary facts to bring his claims, resulting in a period of 424 days between the information discovery and the filing of the complaint. *Id.* at 12-13, n.4. Alternatively, Defendant argues that by October 5, 2009, Plaintiff was sufficiently "suspicious of wrongdoing" to start the clock running because (1) Plaintiff had the PPMs in his possession; (2) Plaintiff submitted his August 14, 2009 10-Day Report; (3) Plaintiff had engaged in some preliminary discussions with Sedgwick; and (4) Plaintiff had discussed with his counsel the general subject of claims against parties such as pre-receivership attorneys. *Id.* at 13. Either way, Defendant argues that Plaintiff's claims exceed the one year statute of limitations set forth in Section 340.6.

The question of what facts were relevant to Plaintiff's claims against Defendant is necessarily dependent upon the substance of Plaintiff's claims themselves. Plaintiff asserts that additional facts were both necessary and not learned until 2010. In his Amended Complaint, Plaintiff

CIVIL - GEN

Initials of Deputy Clerk: jcb  
Page 3 of 8

explains that he did not know of Sedgwick's wrongful actions or omissions "until he had performed an assessment of losses on the unauthorized loans in the first quarter of 2010, reviewed Sedgwick's documents during the Summer and early Fall of 2010, and conducted a confidential interview in early November 2010 of the Sedgwick partner who was principally responsible for the engagement." Amended Complaint, ¶ 29. Before then, Plaintiff alleges that he was not aware of certain material facts, including that: "Sedgwick had undertaken simultaneous representation of both the SPCs which made the unauthorized loans and the Receivership Entities which were manipulating the loan process to generate administrative fees; had not considered, investigated, disclosed, or obtained waivers of the conflicts of interest among its various clients; and had learned of and received copies of Governing Documents early in its engagement and been told that they controlled "the spending of money." *Id.* In short, these facts are the crux of Plaintiff's allegations; without knowing these facts, Plaintiff could not have filed the present action. Both the professional negligence and aiding and abetting claims focus on Defendant's simultaneous representation and failure to obtain conflict of interest waivers. *Id.* at ¶ 31-57. Plaintiff did not merely discover a legal theory in 2010; rather, he learned of the actual acts and omissions that constitute the alleged malpractice in the present case. So long as Plaintiff discovered these facts in a reasonably diligent manner, they are sufficient to overcome the first complaint's deficiency. Plaintiff now alleges that he discovered the "facts constituting the wrongful act[s] or omission[s]" within a year of the filing of the complaint. *See* Section 340.6.

Although Defendant criticizes Plaintiff for detailing his many responsibilities as a Receiver for the first year of his appointment, that additional detail was necessary to demonstrate that Plaintiff's discovery of the facts was done with "reasonable diligence," as required by Section 340.6(a). As this Court previously held, "when a Receiver is appointed, his hands are extremely full." First MTD Order. Plaintiff's explanation of the urgent nature of some of his initial tasks - such as locating and preserving the assets of the Receivership Entities - satisfies the Court that Plaintiff was reasonably diligent in seeking information about the present claims.

Contrary to Defendant's contentions, *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* is not inconsistent with this holding. 133 Cal. App. 4th 658, 683-84 (2005). In *Peregrine*, there were 2001 reports that described much of the conduct later forming the basis of the complaint, which was not filed until 2003. *Id.* Unlike in *Peregrine,* where the investors only belatedly discovered a legal theory, here, Plaintiff did not discover Defendant's alleged acts and omissions themselves until 2010. The majority of Plaintiff's complaint is made up of the facts that Plaintiff alleges he did not learn until 2010. If Defendant would like to challenge the veracity of this assertion, it may do so at a later stage in litigation; for now, Plaintiff has met his pleading requirement of demonstrating that he did not discover the facts constituting the allegedly wrongful acts or omissions until within a year of the complaint's filing date.

2. <u>Four Year Statute of Repose</u>

The Court's statute of limitations inquiry does not end, however, with its conclusion that the one year discovery rule does not bar Plaintiff's claims. Section 340.6 provides that a legal malpractice action must be commenced within the one year discovery rule or "four years from the date of the wrongful act or omission, whichever occurs first." Defendant argues that there are eight loans completed outside of this four year period - the loans to IHHI, Southwest Doctors Group, SMB KING/LAV Care, Dr. Kroop, Lavipharm, Dermacia, Forefront, and Legacy Medical Center. Motion to Dismiss, 16. The date of these loans is undisputed; the question that remains is whether the four year statue of limitations is tolled for adequate time to prevent a statutory limitations bar.

The statute of limitations period for legal malpractice actions "shall be tolled during the time that any of the following exist: (1) The plaintiff has not sustained actual injury; (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." *Id.* Plaintiff asserts the continuous representation and legal disability theories of tolling. Contrary to Plaintiff's contention, the Court did not make any holdings in reference to the four year statute of repose in its First MTD Order; it will now address Plaintiff's tolling theories.

a. Continuous Representation

"The continuous relationship tolling provision applies only so long as the representation continues 'regarding the specific subject matter in which the alleged wrongful act or omission occurred.'" *Lockton v. O'Rourke,* 184 Cal. App. 4th 1051, 1062 (2010) (quoting *Beal Bank, SSB v. Arter & Hadden, LLP,* 42 Cal. 4th 503, 514, fn. 8 (2007)). Although Section 340.6 does not expressly set forth a standard to determine when an attorney's representation continues, California courts have held that "ordinarily the representation is on the same specific subject matter until the agreed tasks have been completed or events inherent in the representation have occurred." *Id.* at 1063 (quoting *Crouse v. Brobeck, Phleger & Harrison,* 67 Cal. App. 4th 1509, 1528 (1998)). *See also Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort,* 91 Cal. App. 4th 875, 887 (2001) ("the attorney's representation does not end until the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal") (citations omitted).

Here, Plaintiff alleges that "Sedgwick's representation of the MCC Group included not only the initial making of loans, but also actions such as submitting opinions and other documents to the Trustees, pursuit of and advice regarding remedies when unauthorized loans went into default, advice with respect to litigation arising out of unauthorized loans, whether unauthorized loans were made in violation of applicable finance lending laws, and other activities related to the specific subject matter of the unauthorized transactions." Amended Complaint, ¶ 24. Sedgwick represented the MedCap entities until it was instructed to stop work on August 3, 2009, when the Receiver was appointed. *Id.* These facts indicate that there is no reason to stray from the widely accepted objective test, under which

the representation is ordinarily deemed continuous until the attorneys' tasks have been completed. Sedgwick continued to represent the MedCap entities until August 3, 2009; as such, the statute of limitations is tolled until that date.[1]

### B. Failure to State a Claim

#### 1. Breach of Duty

##### a. Loan Limitations

Plaintiff and Defendant assert drastically different interpretations of certain language in the Governing Documents, which consist of Note Issuance and Security Agreements ("NISAs") and Private Placement Memoranda ("PPMs"). Plaintiff alleges that these documents contained loan limitations that included caps on the total amount that could be invested in loans, as well as the amount of each loan. Amended Complaint, ¶ 9-12, 18-22. Plaintiff alleges that the purpose of these limits was to reduce the level of risk to the SPCs and investors because MCC allegedly had considerable experience with healthcare accounts receivable but little experience in direct lending and other investments. *Id.* at ¶ 12. Ultimately, Plaintiff contends that Defendant, as lending counsel, breached its duties by failing to properly investigate or disclose that the Loans violated the alleged limitations. *Id.* at ¶ 32, 36, 40.

Defendant, on the other hand, alleges that the purported limitations are merely forward-looking statements and not strict limitations. Motion to Dismiss, 17-18. Defendant points to a section in the PPMs entitled "Forward-Looking Statements," which explains that some statements are forward-looking and that such statements can be identified by the use of words like "anticipate," "estimate," and "will." *Id.* at 18. The section goes on to caution that "the forward-looking statements in this Private Placement Memorandum are only estimates and predictions" and that "actual results could differ materially." *Id.*

Plaintiff argues that the broad boilerplate language in the "Forward-Looking Statements" section of the PPMs does not apply to the loan limitation language, which is materially different from predictions of such things as future operating results or economic conditions. Opposition, 19. Plaintiff argues that the mere use of the word "will" does not transform a limitation into a forward looking statement. *Id.*

Both interpretations of the language in question are plausible. There is not sufficient evidence at this stage in litigation to hold that Plaintiff's pleadings are insufficient to survive a motion

---

[1] Because the statute of limitations is tolled due to the continuous representation exception, there is no need to address the merits of Plaintiff's legal disability argument.

to dismiss. Because Plaintiff's allegations are only required to be plausible at this stage, Defendant's Motion to Dismiss is DENIED as to Plaintiff's breach of duty claims regarding loan limitations.

### b. Conflicts of interest

Plaintiff next alleges that there were conflicts of interest between the various MedCap entities and that Defendant breached its duty of care by failing to "consider, investigate, disclosure, or obtain proper waivers." Amended Complaint, ¶ 17. Plaintiff argues that MCC's desire to generate administrative fees conflicted with the SPCs' need to adhere to the requirements of the Governing Documents and to pay principal and interest on the Notes. *Id.* at ¶ 13. The Officers allegedly "regularly caused one SPC to acquire receivables and loans from another SPC at an inflated price in order to generate cash and pay administrative fees." *Id.* Plaintiff further contends that the SPCs entered high risk loan transactions in violation of the Government Documents' limitations and then sold the loans to other SPCs at full value, even after the loans went into default. *Id.* Once MCC had its fees, there was no penalty to it if the unauthorized loans defaulted; that risk was allegedly borne only by the SPCs and investors. Opposition, 20. This is why, Plaintiff alleges, it was necessary for the SPCs to have independent advising counsel, separate from the counsel that advised MCC. *Id.* These practices allegedly caused MCC to be paid over $320 million in fees from the SPCs, while each of the SPCs, except MPFC I, were left with non-performing or non-existent assets. Amended Complaint, ¶ 13. Plaintiff avers that Defendant "behaved as if its only client was MCC and ignored its independent duties to the SPCs." *Id.* at ¶ 17.

Defendant asserts three main arguments in response. First, Defendant argues that the various MedCap entities had no conflicts with respect to the loans themselves; rather, any conflict resulted from the payment of administrative fees after the loan transactions. Motion to Dismiss, 19. Yet, the fees and the loans are inextricably intertwined; if the SPCs made loans, it resulted in fees for MCC. Thus, the making of the loans themselves could plausibly be alleged to be a conflict of interest between the SPCs and MCC.

Second, Defendant argues that the MedCap officers disclosed all actual and potential conflicts in the PPMs, which stated, "We have conflicts of interest that may result in us taking actions that are not in your best interest." *Id.* at 20. This general boilerplate language is not sufficient as a matter of law to defeat Plaintiff's allegations of Defendant's failure to disclose the conflict between the SPCs and MCC in terms of loans and fees. Whether or not this language was sufficient to provide informed consent must be determined at a later stage of litigation.

Finally, Defendant argues that the MedCap entities were alter egos of one another for conflict purposes, such that they should be considered one "client." *Id.* Particularly because the Amended Complaint alleges that each entity had divergent interest from the others, there are simply not enough facts at the present stage of litigation to determine whether all of the MedCap entities would qualify as alter egos.

### 2. "But for" Causation

Defendant essentially alleges that there can be no "but for" causation because the MedCap Officers are alleged to have perpetuated a Ponzi scheme, such that the unfavorable outcome would have occurred regardless of any actions Defendant had taken. *Viner v. Sweet* is instructive. 30 Cal. 4th 1232 (2003). There, the California Supreme Court held that "a plaintiff in a transactional malpractice action must show that but for the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result." *Id.* at 1244. Here, Plaintiff alleges that if Defendant had taken action to prevent the loans from exceeding the limitations set forth in Governing Documents and if Defendant had adequately disclosed the conflicts of interest between the SPCs and MCC, it could have prevented at least some of the SPC investors' losses. Perhaps Defendant could not have averted the entire fraudulent scheme allegedly perpetuated by the Officers, but the possibility that its advice may have resulted in a more favorable outcome is not implausible.

### 3. Actual Knowledge in Aiding and Abetting Claims

Defendant seeks to dismiss Plaintiff's claims for aiding and abetting a breach of fiduciary duty. Such claims may be alleged in one of two ways. First, a defendant may be liable if he "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005). Alternatively, liability may attach if a defendant "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* Despite Defendant's attempt to focus on the first means of alleging aiding and abetting liability, it is clear that Plaintiff's allegations fall neatly into the second avenue for liability. Here, Plaintiff alleges that Defendant gave substantial assistance to the MedCap entities and separately breached a duty to its clients. Plaintiff does not allege that Defendant had any knowledge of wrongdoing by the MedCap officers, nor is that necessary to allege a viable claim for aiding and abetting a breach of fiduciary duty. Although knowledge is one means of proving aiding and abetting liability, it is not required for second method set forth in Casey.

## IV. DISPOSITION

For the aforementioned reasons, the Motion to Dismiss is hereby DENIED.

The Clerk shall serve this minute order on all parties to the action.